IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **CAROL ANN SMITH,** | ) | Case No. 3:11 CV 00560 |
| | ) | |
| Plaintiff, | ) | Judge JACK ZOUHARY |
| | ) | |
| vs. | ) | **PLAINTIFF'S RESPONSE TO** |
| | ) | **DEFENDANTS' MOTION FOR SUMMARY** |
| **PERKINS BOARD OF EDUCATION, et al.,** | ) | **JUDGMENT ON THEIR SEVENTEENTH** |
| | ) | **AFFIRMATIVE DEFENSE** |
| | ) | |
| Defendants. | ) | Attorney Edward G. Kramer |
| | ) | Counsel for Plaintiff |
| | ) | |
| _____ | ) | |

## I.　PRELIMINARY STATEMENT

Plaintiff Carol Ann Smith is filing this opposition to the Defendants' Motion for Summary Judgment. Fed. R. Civ. Proc. Rule 56 anticipates that there is a moving party and a non-moving party. The moving party always has the burden of persuasion on the motion. The Rule contemplates that the defending party then responds to the motion. *In the instant case, the Defendants have filed not a motion to dismiss, but a summary judgment. The Defendants are attempting to have this Court grant judgment for them before ever responding to any written discovery or even one deposition asked by the Plaintiff.* They are relying on the hearing transcripts and recommendation by an arbitrator in a proceeding that Mrs. Smith did not have the counsel of her own choice, but one imposed by her union! *[See Affidavit of Carol Smith ¶¶45-51 and Exhibits referred therein]* They are asking that Harry Taisch, a private arbitrator,

1

rulings and findings be substituted for this Court's Article III duty to try cases and controversies brought before it.

The defendants' legal contentions that this matter is over based on either res judicata or issue preclusion doctrine are incorrect. The plaintiff should and has the right based on existing law to have her day in court regarding the new claims being raised in this lawsuit. Further, Plaintiff will be filing a Rule 56 (f) request to conduct discovery prior to any ruling on this summary judgment as is her right under the Federal Rules of Civil Procedure.

## II.  ISSUES PRESENTED

Defendants collectively challenge Plaintiff Smith based on the claims by raising res judicata and issue preclusion involving the termination administrative hearing will be addressed in a variety of issues including:

   A. Review of Controlling Federal and State Law on Res Judicta Doctrine, Collateral Estoppel and Issue Preclusion.

   B. Carol Smith's Statutory Claims are Not Barred Because of the Termination Proceeding / Arbitrator Decision Since There Was No Ruling Regarding Them.

   C. Res Judicta Doctrine Does Not Bar Carol Smith From Litigating Both Her Federal And State Claims in this Litigation.

   D. Carol Smith Is Not Barred by Collateral Estoppel or Issue Preclusion from Establishing that Her Treatment by the Defendants Demonstrates that the Board's Decision to Terminate her was Mere Pretext for Impermissible Discrimination

## III.  STATEMENT OF FACTS

The page limitations under the Local Rules make a full statement of the facts not

practicable in this case. What is clear that the Plaintiff was the oldest teacher in the Perkins Local School District at the time of her termination. [See Affidavit of Carol Smith ¶ 6] She had been teaching in the school system since 1976. [Id. at ¶1] From the time of her hiring until the hiring of James P. Gunner as superintendent in 2008, Mrs. Smith always received uniformly positive performance evaluations, never subjected to any disciplinary action or reported as being excessively tardy to or falling asleep in class. [Id. at ¶4]

The plaintiff had several medically recognized disabilities in the relevant time: Type 2 diabetes, seeing, and walking. [Id. at ¶¶ 7, 8, 9, 10, and 34 B] The defendants disciplined her for alleged conduct related to her disabilities. [Id. at ¶¶ 11-13, 15, 20, 29, 30-32, 34, 36 and 39], Mrs. Smith, through counsel asked for reasonable accommodations. [Id. at ¶¶ 17-19], The Defendants refused to grant all the reasonable accommodations requested, but did grant as follows: (A) Plaintiff may keep snacks in the classroom and is permitted to inject herself with insulin in the event of an emergency if she first calls the office, waits for classroom coverage to arrive, and proceeds to the nurse's office to perform the injection; (B) Information will be provided to staff and to Plaintiff's students regarding diabetes, warning signs, and symptoms of low and high blood sugar levels. [Id. at ¶ 20], Then proceeded to ignore them and instead placed the Plaintiff under a microscope of scrutiny enlisting not only administrators,, but teachers and students. [Id. at ¶¶ 21-23, 26, 29-33,36, 40 and 41 As a result of the acts of discrimination and retaliation complained of the School District fired her on April;14, 2010.[ Id. ¶52 which is a detailed interrogatory answer by the Plaintiff discussing many of these acts and actors]

The Plaintiff is filing with this Response a detailed Affidavit with Exhibits which describes her claims and the circumstances leading up to her termination. It identifies individual teachers who were treated differently to her because of her age, disability or taking protected

3

activity. [See Affidavit of Carol Smith ¶¶ ] Plaintiff incorporates by reference this evidence in this Response.

## IV.  LEGAL ARGUMENT

A. **Summary Judgment Standard**

The movant for summary judgment has the burden of establishing that there are no genuine issues of material fact by demonstrating that the non-moving party lacks evidence to support an essential element of its case. 10a Charles A. Wright, et al., Federal Practice and Procedure § 2727, at 35 (2d Ed. 1998); Celotex Corp v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548 (1986); Logan v. Denny's Inc., 259 F.3d 558. 566 (6th Cir. 2001). Summary judgment is appropriate only "where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

In evaluating a motion for summary judgment, all the evidence and facts must be viewed in a light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp, 475 U.S. 574. 587, 106 S.Ct. 1348, 1356 (1986); Wade v. Knoxville Utilities Bd., 259 F.3d 452, 460 (6th Cir. 2001). All reasonable inferences must be drawn in favor of the non-movant. Klepper v. First American Bank, 916 F.2d 377 (6th Cir. 1990). The evidence of the non-movant is to be believed. Entertech Elec. Inc. v. Mahoning County Com'rs, 85 F.3d 257 (6th Cir. 1996). In the instant case

Even if the Plaintiff offered no response to the within Motion, Defendants are not automatically entitled to summary judgment, without proof of the absence of a genuine issue of material fact. See Notes of Advisory Committee on Rule 56; 60 Ivy Street Corporation v.

4

Alexander, 822 F.2d 1432, 1435 (6th Cir. 1987). "In judging whether a nonmovant has produced enough evidence to avoid summary judgment, the district court must consider evidence submitted, even if it would be inadmissible at trial in the form submitted, so long as it could be reduced to admissible form at trial." Cook v. Babbitt, 819 F.Supp. 1 (D.D.C. 1993) (emphasis added) (citations omitted).

**B. Review of Controlling Federal and State Law on Res Judicata, Collateral Estoppel and Issue Preclusion Doctrines.**

The U. S. Supreme Court has ruled that un-reviewed state administrative proceedings such as the Perkins Local School district's teacher termination hearing under R. C. §3319. 16 are not entitled to full faith and credit by federal courts and thus have no preclusive effect upon subsequent litigation like Mrs. Smith's Americans with Disabilities Act, as amended claim[1]. *Cf* University of Tennessee v. Elliott, 478 U.S. 788, 796 (1986); Zanders v. Nat'l Railroad Pass. Corp., 898 F.2d 1127, 1130 (6th Cir. 1990). Elliott remains good law and is the controlling precedent in this case. The Sixth Circuit has a number of decisions construing the Elliott Supreme Court case. In Bechtold v. City of Rosemount, the Sixth Circuit held that where a plaintiff seeks only administrative relief from a state agency, his Title VII claim is not precluded. Bechtold v. City of Rosemount, 104 F.3d 1062, 1066 at fn. 4 (8th Cir. 1997). citing Kremer v. Chemical Construction Corp., 456 U.S. 461, 102 S.Ct. 1883 (1982); see also Pilarowski v. Macomb County Health Dept., 841 F.2d 1281, 1286-1287 (6th Cir. 1988).

In a case involving the issue of whether an employee by going to arbitration waives his federal statutory rights, the Sixth Circuit has placed the burden on the employer to show that the

---

[1] Thomas v. Contoocook Valley School Dist., 150 F.3d 31 (1st Cir. 1998) (New Hampshire Supreme Court's summary affirmance of State Board of Education's decision, finding that sufficient cause supported teacher's nonrenewal, did not preclude teacher from proceeding in federal court on her ADA claim)

5

employee has waived his statutory rights. Kennedy v. Superior Printing Co., 215 F.3d 650, 653-655 (6th Cir. 2000). The Sixth Circuit, relying on Alexander v. Gardner-Denver, 500 U.S. 20, 111 S.Ct. 1647 (1991) was not disturbed that ADA issues would arise in the course of the arbitration, and ruled that absent clearer evidence, the court must find that the employee did not waive his right to bring his ADA claim in federal court. Kennedy, 215 F.3d at 655. Nor does the fact that Mrs. Smith did not elect to seek judicial review of this tainted administrative decision impact her right to bring this litigation.[See Affidavit of Carol Smith ¶¶45-51] The Sixth Circuit in Zanders has definitely stated that there is no requirement that a federal Race or ADA claimant "must pursue in state court an unfavorable state administrative action." Zanders, 898 F.2d at 1132, citing Kremer v. Chemical Construction Corp., 456 U.S. 461, 469, 100 S.Ct. 1883, 1891 (1982). Therefore, it is clear regarding Mrs. Smith's federal ADA Reasonable Accommodations and Retaliation claims in Count 2 and 3 Elliott is the controlling law.[2] The Supreme Court carefully reviewed Title VII and the legislative history of the 1972 amendments to Title VII, and

---

[2]Thomas v. Contoocook Valley School Dist., 150 F.3d 31, (1st Cir. 1998 ) ( As the First Circuit Court of Appeals remarked "…the district court simply read the issue decided in that proceeding too broadly. The State Board determined only that there was "sufficient evidence" in support of the School Board's *proffered* reason for the nonrenewal decision (that "Mrs. Thomas' classroom performance suffered from significant problems"), which is essentially a determination that there was "cause" for Thomas's nonrenewal. This determination is not identical to the inquiry under the ADA: whether the defendant's decision was in fact motivated by discrimination on the basis of Thomas's voice disability. *See* Tolefree v. Kansas City, Missouri, 980 F.2d 1171, 1174 (8th Cir.1992) (holding that a city personnel board determination that a termination for bad performance was "justified" did not preclude plaintiff from pursuing a Title VII "mixed-motive" claim under *Price Waterhouse* ) See also, Roth v. Koppers Industries Inc., 993 F.2d 1058 (3d Cir.1993), the court considered whether unreviewed state administrative findings may be given preclusive effect in a Title VII case. In reaching its decision, the court noted: "Following Elliott, the courts of appeals have unanimously concluded that unreviewed administrative agency findings can never be accorded preclusive effect in subsequent Title VII proceedings." Id. at 1062. In Roth, the court held that ruling is equally applicable to offensive and defensive attempts to use unreviewed state administrative findings. Id.; Caver v. City of Trenton, 420 F.3d 243, 259 (3d Cir.2005) ( Elliott "prohibits the use of collateral estoppel to give an unreviewed state and administrative determination preclusive effect in a Title VII action").

concluded that "Congress did not intend un-reviewed state administrative proceedings to have preclusive effect on Title VII claims." Elliott, 478 U.S. at 796, quoting Alexander v. Gardner-Denver Co., 415 U.S. 36, 48, 94 S.Ct. 1011, 1019 (1974): [T]he legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes."

**C.     Carol Smith's Statutory Claims are Not Barred Because of the Termination Proceeding / Arbitrator Decision Since There Was No Ruling Regarding Them.**

The arbitration decision did not decide issues brought in Mrs. Smith's complaint. Under the Elliot Test, issues not necessarily involved in the state administrative proceeding "will not be precluded in federal court." Nelson v. Jefferson County, 863 F.2d 18, 20 (6th Cir. 1988). The purpose of the arbitration action was to address the issues of whether or not good and just cause existed for Mrs. Smith's termination. Contrastingly, the issues sought to be litigated in the current action is the overarching practice of discrimination and retaliation against Mrs. Smith.

The issues addressed in arbitration were firmly limited by the referee. Harry Taisch stated in the *Report and Reccomendation of The Referee* that whether good and just cause existed for Mrs. Smith's termination was the *only* issue addressed at arbitration. Within that ground the specifications to be discussed were as follows;

> A.      Mrs. Smith engaged in inappropriate discussions with her high school social studies class regarding pornography;
> B.      Mrs. Smith Repeatedly "dozed off" for several minutes at a time while supervising students during 5D Study Hall, thereby continuing a pattern of sleeping on the job and engaging in unprofessional conduct; and,
> C.      Mrs. Smith repeatedly arrived tardy to her 5th Period History Class, thereby (a) leaving her students unattended, and (b) continuing a pattern of being tardy for her assigned duties and engaging in unprofessional conduct.

Discrimination claims brought under the ADA and R.C. § 4112.02(A) are subject to the familiar McDonnell Douglas burden-shifting framework. To establish a prima facie case of employment discrimination, a plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment decision; and (4) he was replaced by a person outside the protected class or treated differently than similarly situated nonprotected employees. Arendale v. City of Memphis, 519 F.3d 587, 603 (6th Cir.2008); *accord* Clay v. United Parcel Serv., Inc., 501 F.3d 695, 703 (6th Cir.2007). No where in the transcripts filed by the Defendants which are attached as Exhibits D and E to their Motion or the Referees report and Recommendation Exhibit C will this Court find either testimony going to these elements or a finding by Mr. Taisch. Therefore under Nelson there can be no res judicata or preclusion on her federal or Ohio statutory rights.

Even in the context of what Mr. Taisch ruled on, the Sixth Circuit has cautioned that when it comes to the employment discrimination context, courts are not bound by the determination of arbitrators. See Hance v. Norfolk S. Ry., 571 F.3d 511, 519 (6th Cir.2009) ("a federal court should not consider an arbitrator's decision binding in a discrimination suit, because to do so would 'unnecessarily limit[ ] the plaintiff's opportunity to vindicate his statutory and constitutional rights.'"); Becton v. Detroit Terminal of Consol. Freightways, 687 F.2d 140, 142 (6th Cir.1982) (finding that allowing an arbitrator's decision "to answer conclusively questions raised in the final step of the McDonnell Douglas analysis unnecessarily limits the plaintiff's opportunity to vindicate his statutory and constitutional rights"). Thus, her claims in Count 1, 2 and 3 involving federal and Ohio statutory rights cannot be barred from being litigated.

The remaining Ohio claim based on Intentional Infliction of Emotional Distress also survives since it was not brought up in the state administrative proceeding. In Ohio, to satisfy a

claim for Intentional Infliction of Emotional Distress, a plaintiff must prove that the defendant: 1) intended to cause of the plaintiff's serious emotional distress. 2) conduct extreme and outrageous; 3) conduct was the proximate cause of the plaintiff's serious emotional distress; 4) the plaintiff suffered serious mental anguish of the nature no reasonable person could be expected to endure. Fitzgerald v. Roadway Express Inc., 262 F. Supp. 2d 849, 858 (2003); Finley v. First Realty Prop. Mgmt., 185 Ohio App. 3d 366, 2009-Ohio-6797, 924 N.E. 2d 378, at ¶34. In the termination hearing it was not possible even to bring this claim. Nor could Mrs. Smith add Mr. Gunner and Mr. Finn as parties in the state administrative proceeding[3]. Just like the statutory claims no where in the transcripts filed by the Defendants or the Referees Report and Recommendation will this Court find either testimony going to these elements or a finding by Mr. Taisch. Therefore under Nelson there can be no res judicata or preclusion on her state Intentional Infliction of Emotional Distress claim.

        **D.**        **Res Judicta Doctrine Does Not Bar Carol Smith From Litigating Both Her Federal And State Claims in this Litigation.**

The Supreme Court of the United States has held that when a state agency acts in a judicial capacity in determining an issue, res judicata may apply to preclude a trial on the same issues in federal court if the determination would be entitled to preclusive effect in the appropriate state court. University of Tenn. v. Elliot. 478 U.S. 788, 796 (1986) The Sixth Circuit in *Nelson v. Jefferson County*, 863 F.2d 18 (6th Cir. 1988) created a three part test to apply to such administrative decisions. For Elliot to apply three things must be determined regarding the administrative decision: 1) Whether the administrative body acted in a judicial capacity; 2)

---

[3] Robinson v. Springfield Local School Dist. Bd. of Educ. 2002 WL 462860 (Ohio App. 9 Dist.,2002) (Because the Superintendent and Business Manager were not parties to the administrative termination action or judicial review below, nor in privity with the Board, neither res judicata or *collateral estoppel* is not applicable to the tort claims brought by fired school custodian.)

9

whether the decision would be given preclusive effect under applicable state law, and 3), whether the federal action seeks to litigate issues already determined by the state agency. <u>Nelson</u>, 863 F.2d at 19.

The nature of the Ms. Smith's claims prevent the <u>Elliot</u> Test from being met. The School Board was not acting in a judicial capacity, her claims would not be barred under Ohio Law, and her current statutory claims were not previously litigated or determined by a state agency. Res Judicata cannot apply to preclude her federal claims.

      **A.**      **Procedure under O. R. C. §3319.16 Does Not Permit the Board of Education to Act In a Judicial Capacity.**

<u>Nelson,</u> ruled that in order for an administrative board to act in a judicial capacity it must "give the parties an opportunity to brief and argue their versions of the facts, and the parties are given an opportunity to seek court review of any adverse findings." <u>Nelson</u> 863 F.2d 18, *supra* quoting <u>Detrex Chem. Industries v. Emp. Ins. Of Wausau</u>, 651 F.Supp. 438, 454 (N.D. Ohio 1987).

The United States Supreme Court noted in <u>Kremer v. Chemical Construction Corporation</u> 456 U.S. 461 102 S. Ct 1883, that "The factfinding process in arbitration usually is not equivalent to judicial factfinding" s*upra*, quoting <u>Alexander v. Gardner-Denver Co</u>. (1974), 415 U.S. 36, 50, 94 S.Ct. 1011, 1117, 39 L.Ed.2d. "The record of the arbitration proceedings is not as complete; the usual rules of evidence do not apply; and rights and procedures common to civil trials, such as discovery, compulsory process, cross-examination, and testimony under oath, are often severely limited or unavailable." <u>Alexander v. Gardner-Denver Co</u>. (1974), 415 U.S. 36, 58. For these reasons arbitration is "a comparity inappropriate forum for the final resolutions of rights created by Title VII." *Alexander*, 415 U.S. at 57.

Mrs. Smith's teacher termination hearing under R. C. §3319.16, indeed arbitration in general, fails to meet this standard. Though Mrs. Smith had the opportunity for judicial review of the Board of Education's final decision, it was deficient for at least five reasons: (a) it did not give her an opportunity to litigate the discrimination, retaliation or tort claims raised in this litigation; (b) it did not provide for suing the individual defendants who put into action the discriminatory and retaliatory conduct; (c) it was tainted by the conflict of interest between herself and her union attorney; (d) it did not allow discovery equivalent to a judicial action; and (d) it denied the constitutional right to a jury trial on all these issues.

R. C. §3319.16 gave Referee Taisch only limited powers to hear a teacher's appeal following termination by the Board to determine if there was just cause for termination. There is no grant of jurisdiction for the Board to hear ADA, Ohio Chapter 4112 or tort claims, nor is there any empowerment to grant relief available under the ADA or Ohio law. It is clear that the Referee cannot grant discovery available under Federal Rules 30, 33, 34 of 36, injunctive relief, damages, or other relief available under the ADA, Ohio Chapter 4112 or tort claims. And, most importantly, there is no right to trial by jury. The Supreme Court in 1975 held that Congress' central purpose in enacting employment discrimination laws like Title VII or the ADA was "to make persons whole for injuries suffered on account of unlawful employment discrimination." Albemarle Paper v. Moody, 422 U.S. 406, 418 (1975 Finally, an essential provision of the 1991 Civil Rights Act grants the right to trial by jury to ADA plaintiffs. 42 U.S.C. § 1981a(2). Therefore the protections of the Seventh Amendment to the U. S. Constitution attach to such claims made subsequent to the 1991 Act. Justice Rehnquist in his strongly-worded dissent in Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 99 S.Ct. 645 (1979) writes, "...to sanction

creation of procedural devices which limit the province of the jury... is in direct contravention of the Seventh Amendment." Parklane Hosiery, 439 U.S. at 345-346.

The Defendant's rely on the ruling by the US. District Court for the Southern District of Ohio in Featherstone v. Columbus Public Schools. This decision does find that the Board of Education and Referee acts in a judicial capacity under §3319.16. However, Plaintiff contends this decision is in error. Neither the Ohio Supreme Court nor the Sixth Circuit have made a similar rulings. Nor did the Featherstone court answer the above deficiencies of the statute.[4] Regardless of the abilities of the Referee the statute is deficient, the first prong of the Elliot test, was not met.

### B. Under Ohio State Law, the Arbitration decision does not preclude Mrs. Smith's lawsuit against the Defendant.

Ohio law establishes that an award in a collective bargaining agreement does not preclude subsequent civil rights lawsuits.[5] The Ohio Supreme Court considers a party's assertions of statutory rights separate from collective bargaining agreements, and "independent of the arbitration process." Youghiogheny & Ohio Coal Co. v. Oszust, (1986), 23 Ohio St.3d 39, 54, 491 N.E.2d 298. "Logic Dictates when an employee complains of being wrongfully discharged, the reason for discharge will be at issue. This will always be the case." *Miller v.*

---

[4] As discussed in the previous sections of the brief Featherstone, which was based on §§1981 and 1983 claims, would not affect the clear US Supreme Court precedent rejecting either res judicata or issue preclusion regarding Plaintiffs ADA claims in Count 2 and 3. Under Elliot, the decisions of a state agency acting in judicial capacity, have the same preclusive effect under federal law because there is no indictation that Congress intended to guarantee trials de novo of Reconstruction claims. *Oh. Empl. Prac. L. § 21:22 (2010-2011) [attached as Exhibit 2].*

[5] The defendants own precedent Featherstone at 1024 admits that "Ohio law it is unclear whether § 3319.16 termination hearings are entitled to preclusive effect" Plaintiff believes the reasoning of the Ohio Supreme Court in Youghiogheny & Ohio Coal Co. v. Oszust, is persuasive on this question.

12

*Pond*, 171 Ohio App.3d 347, 351 (5th District, 2007), 870 N.E.2d 787, 791[6]. Mrs. Smith's statutory issues are not precluded simply because the Referees decision on her termination.regarding her claim of wrongful termination, found in favor of her employer.

As the Court in <u>Minnick v. Middleberg Hts,</u> , 2003 WL 22215612 (Ohio App. 8 Dist. 2003) explained:

> Likewise, here, although the arbitrator's determination of the issues relevant to whether the City had just cause to discipline Minnick under the collective bargaining agreement may involve the same issues as Minnick's statutory discrimination and retaliation claims, any determination regarding whether Minnick was discriminated against in violation of state or federal law would be outside the scope of the arbitrator's duties. Accordingly, Minnick's statutory claims are not barred by the doctrine of collateral estoppel. Id. at Slip Op *8

**C.     The issues addressed in arbitration did not include the issues that were sought to be addressed in the current action.**

This part of the <u>Nelson</u> test was discuss in **Section IV. C** of this brief. Mrs. Smith's termination hearing decision did not decide the issues brought in the current action.

The Defendant's reliance on <u>Macy v. Hopkins School Board of Education</u>, 484 F.3d 357 (6th Cir. 2007), is mistaken, due to significant factual differences between that case and this litigation. <u>Macy</u> denied re-litigation of the Plaintiff's claims because the underlying facts (concerning threats made to students) had already been litigated previously in both a criminal action *and* by an administrative board. <u>Id.</u> at 368. Each was also appealed. *Id*.

In the instant case, Mrs., Smith has had no judicial review of the termination decision. Therefore the facts she seeks to argue in federal court, were *not* litigated, and more importantly, not decided by any court. Because of this, the third prong of the *Elliot* test is not satisfied.

---

[6] Judge Gwin wrote this well reasoned opinion as an Ohio Appeals Judge. The court's holding is that the employee was neither barred by res judicata or issue preclusion because of an arbitrators finding of being fired for just cause. Id. at 352

Under Ohio law, it is presumed that a decision in a collective bargaining agreement, would not preclude a subsequent suit regarding Ohio and Federal civil rights issues.. Therefore, under *Nelson*, the federal complaint is not precluded by res judicata.

### E. Carol Smith Is Not Barred by Collateral Estoppel or Issue Preclusion from Establishing that Her Treatment by the Defendants Demonstrates that the Board's Decision to Terminate her was Mere Pretext for Impermissible Discrimination

The Arbitrator considered only whether the Board had just cause to terminate Carol Smith. He did not consider claims of discrimination or whether the Board's articulated reason was pretext for discrimination. Under collateral estoppel and issue preclusion, the issue in question must actually have been fully litigated in the prior proceeding for it to be given a preclusive effect. Jacobs v. Smurfit-Stone Container Corp., 2007 WL 3244487 (S.D. Ohio Nov.2, 2007). In Jacobs, the court granted defendants' motion for summary judgment when the plaintiff stated that no issues of material fact existed with respect to her discrimination claim. Id. at *2-3. Plaintiff filed a new complaint and defendants moved to dismiss claiming issue preclusion, pertaining to poor performance. Id. at *3. The court denied defendants' motion stating that the prior court had not made "any findings as to whether the articulated reason by the Defendants of poor performance was the true reason for Plaintiff's discharge." Id. at *6.

Such is the situation here. The Referee did not consider the possibility that the reasons offered by the Board for termination were merely a pretext for discrimination. Report and Recommendation of Referee Harry Taich at pp.35-36. The Referee only found that if the reasons given by the Board for termination were true, then there existed good and just cause for the termination. Id. Indeed, Plaintiff did not have an opportunity to litigate at all the issue of pretext as the reason for termination.

14

The doctrine of collateral estoppel only precludes a party from relitigating issues resolved against that party in a prior proceeding if certain criteria are met. It is not a valid defense if all of the following criteria have not been met. The applicable test was laid down by the court in Detroit Police Officer's Assn. v. Young, 824 F.2d 512, 515 (6th Cir. 1987). as follows:

> (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding;
> (2) determination of the issue must have been necessary to the outcome of the prior proceeding;
> (3) the prior proceeding must have resulted in a final judgment on the merits; and
> (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

In the instant case, none of the elements are satisfied. With regards to the first element, the arbitration did not allow the precise issue in the case to be raised and actually litigated. The issue litigated in the arbitration was whether or not there was good and just cause for the Board to terminate the teaching contract of Carol Smith. The termination was the only issue that could be litigated at the arbitration. R.C. 3319.16. Plaintiff was unable to make the argument that the reason for termination was a pretext for age, retaliation and disability discrimination.*[See Affidavit of Carol Smith ¶¶45-51 and Exhibits referred therein]* The Referee was therefore unable to consider this argument when he made his findings after the hearing. Because the precise issue was not raised or litigated, it cannot now be precluded.

The second element was also not met during the arbitration. As previously demonstrated, the referee made his findings, and the Board adopted them, without having addressed the issue regarding differential treatment between Smith and other similarly situated employees, which could have demonstrated pretext in the discrimination or retaliation claims. There was no determination made on the pretext issue, only one regarding just cause for termination. Even

15

without making this determination, the referee was able to complete his findings, which the board adopted. Therefore, it is clear that determination of the pretext claim was not necessary for the referee during the R.C. 3319.16 hearing. Indeed, an inquiry into just cause for termination is a markedly different inquiry that that of one which looks at discrimination. Minnick v. Middleberg Hts, , 2003 WL 22215612 Slip Op *8 (Ohio App. 8 Dist. 2003)

The third element arguably has not been met either. There was no final judgment on the merits with respect to all the claims asserted by the Plaintiff. Indeed, the referee's findings and conclusions only discussed finding just and good cause for termination, which the Board adopted. At no point were any of the other issues discussed, much less given a final judgment on the merits.

The final element clearly has not been satisfied. While it is a factual matter, the reality is Plaintiff did not have a chance to conduct discovery to prepare for the hearing. Additionally, there was a conflict of interest by which the Ohio Education Association was unable to provide counsel for her at the arbitration. While she was able to secure counsel, this additional delay and hassle certainly impacted the ability of the Plaintiff to prepare for her termination hearing. Regardless of these factual issues, however, there also exist legal, common-sense reasons why the fourth element is not met.

The entire hearing was designed only to determine if there was good and just cause for the Board to terminate the contract. Plaintiff was unable to raise her claims against the individual Defendants in this forum, This lawsuit is needed to address those individual defendants who conducted these illegal acts. Likewise, Plaintiff could not raise the: Americans With Disabilities Act claim, nor her R.C. 4112 claims, or her Intentional Infliction of Emotional Distress claim, during this process. Further, Plaintiff was unable to recover money damages for these claims

16

through arbitration. The arbitrator made no findings of discrimination or intentional conduct in his findings or conclusions of law. These are essential elements of the claims asserted, and to not reach any finding, either in our favor or opposed, indicates that these issues have not been fully and fairly litigated previously.

The United States Supreme Court has addressed this issue, ruling against preclusion under these circumstances, stating that,

> In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective-bargaining agreement. By contrast, in filing a lawsuit under Title VII, an employee asserts independent statutory rights accorded by Congress. The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence.

Alexander v. Gardner-Denver Co., 415 U.S. 36, 49-50 (1974). The court also discussed that arbitration is not the correct forum for full resolution of such claims. Id. at 56-57. The Court correctly noted that an arbitrator is bound by the terms in the CBA, and he must choose those over a conflicting statutory provision. Id. The result is that the arbitration is effective in protecting an employee's contractual rights, while being inadequate and inappropriate to fully protect their statutory and constitutional rights.

Courts have held that preclusion is inapplicable, even if multiple claims arise from the same factual scenario, if the contractual and statutory rights being asserted have legally independent origins.Id. at 52. The rationale of Gardner-Denver appears to have been adopted in Ohio. See Thomas v. Gen. Elec. Co., 131 Ohio App. 3d 825, 830, 723 N.E.2d 1139, 1143 (Ohio App. 1 Dist. 1999) (noting that "This court also believes that the rationale of *Gardner-Denver* was expressly approved by the Ohio Supreme Court in *Youghiogheny & Ohio Coal Co.*

17

*v. Oszust.); See also* Youghiogheny & Ohio Coal Co. v. Oszust., *23 Ohio St.3d 39, 44, 491 N.E.2d 298, 302 (1986) (Wright, J. Concurring).*

In Felger v. Tubetech, Inc., 2002 WL 417903 (Ohio App. 7 Dist.). the court, in accordance with several decisions discussing the limited nature of an arbitrator's power, stated that "by determining than an arbitrator's decision will be binding on all other tribunals, we would be placing the power of a judge in the hands of an arbitrator." The court then reiterated that the role of an arbitrator is limited to contractual claims an employee has under a collective bargaining agreement, and cannot be extended to other claims, such as discrimination. Id. The court noted that Felger was not estopped from enforcing her rights under the statute, even though they arose out of the same factual basis as her claim under the collective bargaining agreement, because the reason for the discharge will always be at issue, both for contractual and statutory claims. Id. at 7.

After noting that "this Court continues to follow… the line of cases headed by Gardner-Denver," and extending its holding to R.C. 4112 civil rights claims, the Thomas Court held that a union cannot waive the rights of its individual members in selecting a forum for a member's claims. 723 N.E.2d at 1143. It was held that the employee in Thomas could, if he chose, submit his claim to arbitration; however, the court expressly refused to force him to do so. Id. Instead, the Court made it clear that it was the choice of the individual employee as to which forum to proceed in. Id. Finally, the court noted that "neither exhaustion nor election of remedies is at issue here," further bolstering the position of the employee. Id.

Similarly, in the instant matter, the prior arbitration/termination proceeding did not make a determination as to whether evidence of differential treatment between Smith and other similarly-situated employees could demonstrate pretext in a discrimination claim. Furthermore,

18

Defendant's reliance on Featherstone is misplaced. In that case, the Plaintiff had raised the issue of discrimination in the prior proceedings, thus the prior courts had already fully litigated the issue as to whether there were sufficient facts to establish discrimination. See Featherstone v. Columbus Public Schools, 39 F. Supp. 2d 1020, 1024 ( S.D. Ohio 1999).  Here, the issue of discrimination has not been raised in the prior arbitration proceeding.  Thus, the discrimination claim was not litigated at all, and the Featherstone precedent is inapplicable to the present action.

The claims advanced by Plaintiff Carol Smith have not been fully and completely resolved through the arbitration proceeding.  In fact, they were not even addressed during the arbitration.  The weight of the legal authority is in favor of these claims being heard by this honorable court.  To grant the Defendant's motion for summary judgment would be to dismiss legitimate claims by the Plaintiff, without her having had her day in court to fully litigate these issues.  Plaintiff is entitled to a full and fair trial on all of her claims.

## V.  CONCLUSION

For the forgoing reasons, Defendants Motion for Summary Judgment should be denied.

Respectfully submitted,

/s/ *Edward G. Kramer*
EDWARD G. KRAMER (0024873)
Edward G. Kramer (0024873)
Kramer & Associates, LPA
3214 Prospect Avenue
Cleveland, Ohio 44115
216-431-5300 ext 101

**CERTIFICATE OF SERVICE**

The forgoing Plaintiff's Response to Defendants' Motion for Summary Judgment on Their Seventeenth Affirmative Defense was filed electronically on October 15, 2011. All parties of record shall receive notification though the operation of the Court's electronic docketing system.

/s/ *Edward G. Kramer*
Attorney for Plaintiff