IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Carol Ann Smith,

                Plaintiff,

      -vs-

Perkins Board of Education, et al.,

                Defendants.

Case No. 3:11 CV 560

MEMORANDUM OPINION
AND ORDER

JUDGE JACK ZOUHARY

## INTRODUCTION

Before this Court is Defendants' Motion for Summary Judgment (Doc. No. 17).  Defendants are the Perkins Board of Education, James Gunner (District Superintendent), and Stephen Finn (Principal of Briar Middle School).  Plaintiff, Carol Ann Smith, is a former teacher (Doc. No. 1 at 4). Plaintiff alleges Defendants terminated her in violation of Ohio law, failed to accommodate her and retaliated against her in violation of Ohio law and the federal Americans with Disabilities Act ("ADA"), and that she suffered an intentional infliction of emotion distress (Doc. No. 1 at 12–15). This matter has been fully briefed (Doc. Nos. 17, 22 and 24).

## BACKGROUND

Plaintiff began her employment with the Perkins Local School District in 1976 (Doc. No. 1 at 5).  In 1992, Plaintiff was diagnosed with Type 2 diabetes, and she eventually required insulin injections (Doc. No. 1 at 5). During her employment, "Plaintiff received uniformly positive performance evaluations" until 2008 (Doc. No. 1 at 5).

In September 2008, Plaintiff received notice of a disciplinary conference regarding allegations that she had been sleeping during class (Doc. No. 1 at 6).  Plaintiff alleges she was not sleeping, but rather exhibiting symptoms of her disability -- diabetes (Doc. No. 1 at 6).  She sent a letter from her healthcare provider to Principal Finn, explaining her disability and symptoms (Doc. No. 1 at 6).  Principal Finn placed a written reprimand in Plaintiff's file and scheduled her for a performance evaluation (Doc. No. 1 at 7).

Plaintiff hired an attorney, who responded in writing to the reprimand (Doc. No. 22-7 at 18).  Plaintiff's attorney also requested several accommodations for her disability (Doc. No. 22-1 at 21).  The following accommodations were provided (Doc. No. 1 at 8):

(A)     Plaintiff may keep snacks in the classroom and is permitted to inject herself with insulin in the event of an emergency if she first calls the office, waits for classroom coverage to arrive, and proceeds to the nurse's office to perform the injection;

(B)     Information will be provided to staff and to Plaintiff's students regarding diabetes, warning signs, and symptoms of low and high blood sugar levels.

Plaintiff was given the option of disseminating this diabetes information if she chose (Doc. No. 1 at 8).

Plaintiff was suspended on three separate occasions after the accommodations took effect.  First, Plaintiff received a three-day unpaid suspension on April 2, 2009 for missing two class periods on February 25, 2009 (Doc. No. 1 at 9).  Plaintiff claims she was injecting herself with insulin at the time (Doc. No. 1 at 9).  Second, Plaintiff was suspended from August 25, 2009 to September 11, 2009 due to repeated incidents of sleeping in class (Doc. No. 1 at 10).  Third, Plaintiff was suspended in March 2010 for using Playgirl Magazine as an example of yellow journalism (Doc. No. 1 at 10).  Plaintiff apparently discussed with her students the differences between sensationalism and

2

pornography (Doc. No. 18 at 30–31).  Following this last incident, Plaintiff was informed that

Superintendent Gunner would be recommending her termination to the Perkins Board of Education

(Doc. No. 1 at 10–11).

The Board terminated Plaintiff's contract on April 14, 2010 on the basis of "good and just

cause," specifying three grounds (Doc. No. 18 at 3):

- • Mrs. Smith engaged in inappropriate discussions with her high school social studies class regarding pornography;

- • Mrs. Smith repeatedly "dozed off" for several minutes at a time while supervising students . . . thereby continuing a pattern of sleeping on the job and engaging in unprofessional conduct; and

- • Mrs. Smith repeatedly arrived tardy . . . thereby (a) leaving her students unattended, and (b) continuing a pattern of being tardy for her assigned duties and engaging in unprofessional conduct.

Plaintiff challenged her firing and requested administrative review of the Board's decision

(Doc. No. 1 at 11).  The administrative hearing took place on July 21–22 and August 11–12 of 2010

before Referee Harry Taitch (Doc. No. 1 at 11).

**Administrative Hearing**

Referee Taitch reviewed each of the Board's grounds for termination and supporting evidence.

At the time of the hearing, Plaintiff was 71 years old and had thirty-four years of teaching experience

(Doc. No. 18 at 12).  Principal Finn testified he observed Plaintiff sleeping (eyes closed, leaning

back, and mouth opened) during class on September 4 and September 9, 2008.  The same behavior

was observed by an assistant-principal on September 22 (Doc. No. 18 at 13).  According to Principal

Finn, Plaintiff admitted to sleeping in class on September 4, but denied the other incidents, claiming

her sleepiness was caused by diabetes. These three events caused Principal Finn to issue the October

written reprimand, and he testified that her behavior posed a danger to students (Doc. No. 18 at 14).

3

Taitch also heard testimony regarding Plaintiff's suspensions, as well as additional evidence showing Plaintiff repeatedly fell asleep during class (Doc. No. 18 at 14–17). Finally, Taitch reviewed the results from a March 2010 investigation that included testimony from several students who verified Plaintiff had fallen asleep in class numerous times (Doc. No. 18 at 19–25).

After considering all the evidence, Taitch concluded the Board's first ground did not warrant termination. While Taitch agreed that using Playgirl magazine as an example of yellow journalism "does not conform in any way to the social studies course of study" (Doc. No. 18 at 36) and that discussing pornography with a ninth grade class was "inappropriate" (Doc. No. 18 at 37), he ultimately determined Plaintiff "does not have a reputation for teaching inappropriate subjects" and her reference to pornography "was not conduct that was flagrant, outrageous, or persistent . . . . " (Doc. No. 18 at 37).

Taitch, however, did find the Board had established, by a preponderance of evidence, the other grounds warranting termination: namely, Plaintiff's sleeping in class, and at other times during her employment, was "persistent, flagrant and outrageous" (Doc. No. 18 at 40); and her repeated absences and tardiness to class were unacceptable behavior (Doc. No. 18 at 42). He described her conduct as "totally unprofessional, inappropriate, unsafe, outrageous, flagrant, and persistent and threatened the safety, security and welfare of the students." (Doc. No. 18 at 43).

Referee Taitch's decision was given to Plaintiff on October 9, 2010 (Doc. No. 18 at 44). On March 17, 2011, Plaintiff filed her Complaint with this Court (Doc. No. 1).

**The Complaint**

Plaintiff alleges four grounds for wrongful termination (Doc. No. 1 at 12–15):

- Count One: Age Discrimination in Violation of Ohio Revised Code §§ 4112.14 and 4112.99;

4

- Count Two: Refusal to Make a Reasonable Accommodation For a Disability in Violation of the ADA and R.C. 4112;

- Count Three: Plaintiff's Termination was Retaliatory in Violation of the ADA and R.C. 4112; and

- Count Four: Intentional Infliction of Emotion Distress.

Plaintiff seeks declaratory and injunctive relief, requesting this Court find her termination unlawful, reinstate her as a teacher with all accrued benefits and back pay, award her additional damages for mental distress and anguish, and award punitive damages against Defendants Gunner and Finn for the intentional infliction of emotional harm.

## STANDARD OF REVIEW

Pursuant to Federal Civil Rule 56(a), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When considering a motion for summary judgment, the court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

## ANALYSIS

Defendants argue all of Plaintiff's state and federal claims are barred and summary judgment is appropriate (Doc. No. 17-1 at 6–13). Specifically, Defendants argue the administrative hearing

found Plaintiff's termination was for "good and just cause," a finding which now precludes Plaintiff

from arguing she was terminated for discriminatory reasons (Doc. No. 17-1 at 7).  Defendants also

argue Plaintiff's state law claims are barred by the very language of the Ohio statute.  How each count

is, or is not, appropriate for summary judgment is discussed below.

### Age Discrimination Under R.C. §§ 4112.14 and 4112.99

Plaintiff alleges her termination violated R.C. § 4112.14, which provides:

> Any person aged forty or older who is discriminated against . . . or discharged without
> just cause . . . may institute a civil action against the employer . . . .The cause of action
> . . . shall not be available in the case of discharges where the employee has available
> . . . the opportunity to arbitrate the discharge or where a discharge has been arbitrated
> and has been found to be for just cause.

Defendants argue Plaintiff's termination was arbitrated and found to be for just cause;

therefore, R.C. § 4112.14, by its terms, is unavailable (Doc. No. 17-1 at 7–9).  Plaintiff received an

administrative hearing under R.C. § 3319.16, not an arbitration.  However, proceedings which are "the

functional equivalent of arbitration" also bar claims under R.C. § 4112.14.  *Meyer v. United Parcel*

*Serv., Inc.*, 122 Ohio St. 3d 104, 114–17 (2009) (finding UPS grievance procedures were equivalent

to an arbitration and barred age discrimination claim under R.C. § 4112.14).

Plaintiff also alleges a violation of R.C. § 4112.99.  That section, however, does not state a

separate cause of action but simply provides "[w]hoever violates this chapter is subject to a civil

action for damages, injunctive relief, or any other appropriate relief."  Like R.C. § 4112.14, this

section is also barred by previous arbitration.  *Meyer*, 122 Ohio St. 3d at 116 (finding a R.C.

§ 4112.99 claim "undoubtedly falls within the ambit" of R.C. § 4112.14).

The grievance proceeding Plaintiff received was "the functional equivalent of an arbitration"

so as to bar her R.C. 4112 claims.  *Featherstone v. Columbus Pub. Sch.*, 39 F. Supp. 2d 1020 (S.D.

Ohio 1999), is instructive.  Interpreting the exact type of hearing, the *Featherstone* court held R.C. § 3319.16 hearings are judicial in nature, requiring a neutral referee, notice, and a complete stenographic record provided to the teacher.  *Id.* at 1023.  Parties may be represented by counsel, may cross-examine witnesses, and may subpoena witnesses; testimony is taken under oath; and teachers may appeal adverse decisions by the referee to the state common pleas court.  *Id.*

Here, Plaintiff was found to be terminated for just cause at a hearing that was functionally equivalent to an arbitration.  Therefore, her R.C. §§ 4112.14 and 4112.99 claims are barred.

**Reasonable Accommodations**

The second count alleges Defendants failed to make reasonable accommodations for Plaintiff's disability in violation of the ADA, 42 U.S.C. § 12112(b)(5)(A), and R.C. § 4112.02(A).  Ohio's disability discrimination statute parallels the requirements of the federal ADA statute, and this Court may look to federal law in its interpretation of Ohio law.  *See Brenneman v. MedCentral Health Sys.*, 366 F.3d 413, 418 (6th Cir. 2004).

The ADA prohibits employers from "discriminat[ing]  against a qualified individual on the basis of disability," including "not making reasonable accommodations" for a disabled employee. 42 U.S.C. § 12112(a)(b)(5)(A).  To prevail on a failure to accommodate claim, Plaintiff must show: (1) she is disabled; (2) she is qualified for the job, with or without reasonable accommodation; and (3) she was denied a reasonable accommodation.  *Penny v. United Parcel Serv.*, 128 F.3d 408, 414 (6th Cir. 1997).

As to the first element, the ADA defines "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of [the affected] individual." 42 U.S.C. § 12102(1)(A).  Plaintiff must provide "sufficient evidence" of her substantial limitation to show her

7

diabetes is a disability under the ADA.  *Gilday v. Mecosta County*, 124 F.3d 760, 765 (6th Cir. 1997)

(plaintiff's testimony on diabetic symptoms and irritability sufficient to survive summary judgment

on ADA claim).  Plaintiff provides no factual documentation, or legal citations, to support her

allegation. Nonetheless, Defendants do not dispute Plaintiff's disability, and this Court accepts

Plaintiff's diabetes as a disability under the ADA.  The first element of Plaintiff's reasonable

accommodations claim is assumed to be met.

Nor do Defendants contest Plaintiff's qualifications as a teacher.  When she was fired, Plaintiff

had taught for over thirty years and had a master's degree (Doc. No. 1 at 5).  The second element of

her claim is met.

The third and final element of her claim requires this Court to examine whether she was denied

reasonable accommodations. 42 U.S.C. § 12111(8) defines "reasonable accommodation" and includes

job restructuring, part-time or modified work schedules, reassignment to a vacant position, and

acquisition or modification of equipment or devices.  Importantly, "an employee cannot force her

employer to provide a specific accommodation if the employer offers another reasonable

accommodation." *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1108 (6th Cir. 2008).

Plaintiff requested the following accommodations (Doc. No. 22-1 at 21):

1.    All staff and administrators of PLSD who work directly or in association with
      [Plaintiff] will become familiar with and trained in recognizing symptoms of
      diabetes and, when necessary, providing minimal treatment as outlined below.

2.    If an individual observes or is informed that [Plaintiff] appears to be asleep,
      the individual should approach and quietly ask [Plaintiff] if she is in need of
      assistance.

3.    If she responds, ask what she needs or offer to provide her with a drink of
      water, a candy bar, or juice to help adjust blood sugar.

8

4.      If [Plaintiff] does not respond, repeat step # 2 and, if no further response is made, seek immediate medical assistance by calling 911.

5.      If at any time [Plaintiff] is in need of insulin, she may request and will be provided a five to ten minute break in order to inject herself with her insulin medication in privacy.

Instead of the above accommodations, Defendants allowed Plaintiff to keep snacks in her classroom to help moderate her blood sugar.  She was also permitted to inject herself with insulin in the nurse's office -- in privacy as she requested -- as well as conduct regular blood tests.  Plaintiff was also permitted to distribute information to students and staff regarding her disability (Doc. No. 1 at 8). Plaintiff was reminded that if she was having problems with her blood sugar, "[s]he simply needs to call the office and ask for assistance." (Doc. No. 22-1 at 22).

Plaintiff's primary objection to these accommodations is they "conspicuously failed to address Plaintiff's request that verbal confirmation be obtained in the event that she appears to be asleep . . . ." (Doc. No. 1 at 8).  First, that request is not reasonable because Plaintiff is required to be awake and alert in class.  *Brickers v. Cleveland Bd. of Educ.*, 145 F.3d 846, 850 (6th Cir. 1998) (exempting employee from an essential job requirement is not an accommodation).  Second, numbers 2, 3, and 4 above -- dealing with the verbal confirmation and the steps that follow -- are not accommodations at all, but rather directions on how to conduct triage on Plaintiff if one were to find her unconscious in the classroom or elsewhere.

Because Plaintiff was in fact afforded reasonable accommodations under the ADA and Ohio law, she cannot satisfy the third element of her claim.  *Gaines v. Runyon*, 107 F.3d 1171, 1178 (6th Cir. 1997) (employer need only provide reasonable accommodation necessary to perform job). Accordingly, this claim too is dismissed.

9

**Retaliation**

Plaintiff next alleges her termination was retaliatory in violation of the ADA and R.C. § 4112.02, specifically that her charges of discrimination "played a substantial or motivating factor in her being terminated by the Defendants" (Doc. No. 1 at 14).  To make out a case of retaliation, Plaintiff must show: (1) she engaged in protected activity; (2) she suffered adverse employment action; and (3) a connection existed between the protected activity and the adverse action.  *Penny*, 128 F.3d at 417.

Assuming *arguendo* the first two elements are met, Plaintiff certainly fails the third requirement.  This is because her termination hearing found she was terminated for "just cause."  Plaintiff cannot now challenge that finding by arguing her discharge was for discriminatory or retaliatory reasons.  "When a state agency acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts."  *University of Tennessee, et al., v. Elliot*, 478 U.S. 788,799 (1986).  It is settled Ohio law "that state administrative proceedings are entitled to preclusive effect when conducted in a judicial nature."  *Featherstone* at 1024 (citing *Grava v. Parkman Township*, 73 Ohio St. 3d 379, 381 (1995).

The Sixth Circuit, applying *Elliot*, developed a three-step process to determine when an agency's action should be given preclusive effect: "first, was the agency acting in a judicial capacity; second, would the decision have preclusive effect under [Ohio] law; and third, does the federal action seek to litigate issues already determined by the state agency."  *Nelson v. Jefferson County*, 863 F.2d 18, 19 (6th Cir. 1988).  Applying this three-step review to the exact type of hearing Plaintiff received

10

in this case, the *Featherstone* court found "no reason to deny § 3319.16 termination hearings the preclusive effect given to other administrative determinations . . . ." 39 F. Supp. 2d at 1023–24.

As in *Featherstone*, the amount of evidence presented at Plaintiff's grievance hearing was substantial -- over 1,200 pages of transcript, 129 exhibits and 27 witnesses (Doc. No. 17-1 at 4). Additionally, during the four-day hearing, Plaintiff had the assistance of counsel, had a full and fair opportunity to raise any defenses or challenges to her termination, and could have appealed the decision of the referee to state court. Plaintiff, in this lawsuit, seeks to relitigate issues already decided in her administrative hearing where the neutral referee determined that sleeping during class and repeated absences warranted Plaintiff's termination (Doc. No. 18 at 40). Plaintiff does not get a second bite at the apple. Plaintiff's retaliatory claim fails as well.

### Intentional Infliction of Emotional Distress

Plaintiff's final claim alleges Defendants waged "a campaign to harass [Plaintiff] being extreme, outrageous and intentionally invasive of her mental and emotional tranquility . . . ." (Doc. No. 1 at 14–15). To succeed with this claim, Plaintiff must establish: (1) Defendants intended to cause Plaintiff emotional distress or should have known such serious emotional distress would result; (2) Defendants' conduct was outrageous, extreme, beyond all possible bounds of decency, and utterly intolerable in a civilized community; (3) Defendants' conduct proximately caused Plaintiff's psychic injury; and (4) Plaintiff's emotional distress is so serious that no reasonable person could be expected to endure it. *Talley*, 542 F.3d at 1110 (6th Cir. 2008) (interpreting Ohio law); *see also Phung v. Waste Mgt., Inc.*, 71 Ohio St. 3d 408, 410 (1994).

The Complaint does not specify particular instances where Defendants' conduct allegedly caused her psychic injury. Instead, it generally indicates nefarious conduct began in November 2008

11

and concluded with her termination in April 2010 (Doc. No. 1 at 14). A detailed review of the pleadings and record reveals no support for her claim. "Such bald allegations are clearly insufficient to forestall summary judgment." *Aureus Holdings, Ltd. v. Detroit City*, 303 F. App'x. 265, 270–71 (6th Cir. 2008).  And, to the extent this claim relates to her termination, for reasons noted above, this claim is without merit.

### CONCLUSION

Plaintiff is commended for her many years of dedication and devotion to teaching.  It is sad perhaps that she stayed on too long when she was not able to keep up with the demands of the profession.  This Court cannot find fault with the efforts of the school to accommodate and work with Plaintiff over time, nor can this Court find fault with the referee's decision that her termination was warranted.  For all the above reasons, Defendants' Motion is granted and this case is dismissed.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

January 12, 2012