UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO,
WESTERN DIVISION

| | | |
|---|---|---|
| Carol Ann Smith | ) | Case No. 3:11-CV-00560 |
| | ) | |
| | ) | JUDGE JACK ZOUHARY |
| Plaintiff | ) | |
| | ) | MAG. VERNELIS ARMSTRONG |
| | ) | |
| v. | ) | AMENDED COMPLAINT |
| | ) | (Jury Demand Endorsed Hereon) |
| | ) | |
| Perkins Board of Education, et al, | ) | Paul T. Belazis (0030356) |
| | ) | 7654 W. Bancroft Street |
| | ) | Toledo, Ohio    43617 |
| Defendants | ) | (419) 843-1333 Telephone |
| | ) | (419) 843-3888 |
| | ) | Belazis@maf-law.com |

_____

PRELIMINARY STATEMENT

1. This Complaint arises out of the long term employment relationship between Plaintiff Carol Smith and Defendant Perkins Board of Education.

2. Plaintiff alleges that she was terminated because of her age, disability, and in retaliation for taking protected actions under the federal and Ohio civil rights laws. Plaintiff was further subjected to disparate working conditions, discipline, and subsequent termination of her employment based upon her disabilities and defendants' failure to provide reasonable accommodations. As alleged herein, defendants' conduct violated state and federal civil rights laws, as well as the common law of the state of Ohio.

3. Defendants willfully and/or intentionally and/or recklessly imposed unfavorable, harassing terms and conditions of employment upon plaintiff; assigned her to menial tasks for the purpose of causing humiliation and embarrassment; disregarded her obvious

1

need for reasonable accommodations in light of known disabilities; failed to engage in an interactive process to identify and provide reasonable accommodations, and retaliated against her for engaging in protected activity, including complaints of defendants' unlawful conduct.

## JURISDICTIONAL STATEMENT

4. Jurisdiction over this action is based on 28 U.S.C. §§ 1331, 42 U.S.C § 12117, and 42 U.S.C § 2000e. This Court also has supplemental jurisdiction of plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5. Plaintiff has filed a timely charge of discrimination with the United States Equal Employment Opportunity Commission, charge number 471-2010-01950, a true and accurate copy of which was attached to plaintiff's initial Complaint and is incorporated herein by reference.

6. A right to sue letter was issued on December 16, 2010 and subsequently received by the Plaintiff. This litigation was timely commenced.

## PARTIES

7. Plaintiff Carol Ann Smith was born on August 15, 1938. Mrs. Smith had worked as a teacher for the Defendant Perkins Board of Education for nearly 34 years. She is a "qualified individual with a disability" under 42 U.S.C. § 12111 (8). Further, and pleading in the alternative, plaintiff is a person who was treated as or regarded as a person with a disability or who has a record of having had a disability.

8. Defendant Perkins Board of Education is an employer under Ohio Revised Code Chapter 4112, and the Americans with Disabilities Act, 42 U.S.C. § 12102 et seq., and a person under 42 U.S.C. § 1983.

9. Defendant Dr. James P. Gunner has been the Superintendent for the Perkins Local

School District since 2008. He is an employer under Ohio Revised Code Chapter 4112 and the Americans with Disabilities Act, 42 U.S.C. § 12102 et seq., and a person under 42 U.S.C. § 1983.

10. Defendant Stephen P. Finn is the Principal of Briar Middle School and as a result of his position is an employer under Ohio Revised Code Chapter 4112 and the Americans with Disabilities Act, 42 U.S.C. § 12102 et seq., and a person under 42 U.S.C. § 1983.

11. At all times relevant hereto, defendants acted under color of state law.

## FACTUAL ALLEGATIONS

12. Plaintiff received her bachelor's degree from Bowling Green State University in August 1972.

13. Beginning in September 1972, Plaintiff was employed for three years as the high school business teacher and varsity tennis coach for St. Paul's High School in Norwalk, Ohio.

14. At the completion of the 1974-1975 school year, Plaintiff took a year off from teaching in order to complete her masters' degree, which she received from Bowling Green State University in December 1976.

15. In September 1976, Plaintiff began her employment with the Perkins Local School District as the business instructor at Perkins High School.

16. In 1980, Plaintiff was awarded tenure and began a continuing contract with the Perkins Local School District.

17. In addition to her responsibilities as the high school business instructor, Plaintiff has also taught American History as Briar Middle School during her tenure with Perkins Local Schools.

18. From the time of her initial hiring in 1976 until the hiring of Dr. James P. Gunner

3

as Superintendent for the Perkins Local School District in 2008, Plaintiff received uniformly positive performance evaluations and was never subjected to any disciplinary action, including but not limited to discipline for being excessively tardy to or falling asleep in class.

19. In 1992, medical testing performed in conjunction with surgery to repair an injury to Plaintiff's rotator cuff revealed that she had developed Type 2 diabetes.

20. Plaintiff's diabetic condition was initially controlled by oral medication, but her condition deteriorated, and in or around 1999, she was prescribed injected insulin. At all times relevant hereto, plaintiff also suffered from morbid obesity secondary to her diabetic condition, together with other related physical impairments.

21. In July, 2005, Plaintiff had surgery to remove a cataract from her right eye; subsequent to the surgery, she suffered a serious staph infection and was on at least two occasions entirely without sight in the afflicted eye.

22. After several surgeries, vision in Plaintiff's right eye was improved, but she remains highly sensitive to light and changes in light, which can require her to close one or both of her eyes for several minutes in order to adjust and/or for the purpose of resting one or both eyes.

23. At times relevant hereto, plaintiff's medical and physical impairments substantially limited one or more "major life activities," as defined by 42 U.S.C. § 12102, including, but not limited to, walking, standing, seeing, and concentrating.

24. At all times relevant hereto, defendants were aware that plaintiff was a qualified person with a disability. Furthermore, defendants were aware that plaintiff suffered from medical conditions and related physical impairments, including those described herein, that substantially limited one or more major life activities and that she required reasonable accommodations to

4

perform the requirements of her job in light of such disabilities.

25.     At all times relevant hereto, plaintiff informed defendants of her disabilities and requested reasonable accommodations.  Defendants failed and/or refused to provide plaintiff with reasonable accommodations and further failed and/or refused to engage in an interactive process as required by law to identify and implement reasonably necessary and appropriate accommodations.

26.     Further, on September 29, 2008, Plaintiff received notice of a disciplinary conference to be held with regard to incidents in which it was alleged that she was found to be sleeping on school premises during the school day while teaching at Briar Middle School.

27.     At the time of the purported incidents, Plaintiff in fact was not sleeping but rather was exhibiting symptoms of unstable blood sugar resulting from her diabetic condition.

28.     The next day, September 30, 2008, Plaintiff promptly furnished a letter documenting her disability and explaining its symptoms from her healthcare provider to Principal Stephen P. Finn of Briar Middle School.

29.     Nevertheless, on October 6, 2008, Finn placed a written reprimand predicated on the alleged incidents in Plaintiff's personal file.  This reprimand deliberately mischaracterized Plaintiff's response to the allegations of sleeping on school premises and explanation of her disability.  The reprimand indicates that "you indicated that a medical condition, more specifically diabetes, might be a contributing factor to your falling asleep in class", when in fact Plaintiff denied sleeping in class and explained that episodes of excessively high or low blood sugar can cause her to close her eyes and appear to be sleeping even though she is not.

30.     Further, on October 8, 2008, Plaintiff received a memorandum informing her of a scheduled evaluation, the first of many that would be conducted over the subsequent eighteen (18)

5

months in excess of the number of evaluations permitted for teachers on continuing contracts under the terms of the Collective Bargaining Agreement between the Perkins Educational Association and the Perkins Board of Education.

31. On October 14, 2008, Plaintiff submitted through counsel a written rebuttal to the reprimand to be placed in her personal file. On the same date, Plaintiff requested in writing that reasonable accommodation be made for her disability pursuant to 42 U.S.C. 12101, et seq., and O.R.C. 4112.02(G), to wit:

    a. that staff members and administrators of Perkins Local Schools who work directly or in association with Plaintiff be familiarized with the symptoms of diabetes;

    b. that is an individual observes Plaintiff appearing to be asleep, that individual approach her and ask if she requires assistance;

    c. that if Plaintiff responds affirmatively, she be assisted in obtaining water, juice, or candy to help adjust her blood sugar;

    d. that if Plaintiff does not respond, emergency medical assistance be summoned; and

    e. that Plaintiff be provided with five-to-ten minute breaks as necessary to inject herself with insulin.

32. On November 18, 2008, Superintendent Gunner responded to Plaintiff's request for an accommodation as follows: (a) Plaintiff may keep snacks in the classroom and is permitted to inject herself with insulin in the event of an emergency if she first calls the office, waits for classroom coverage to arrive, and proceeds to the nurse's office to perform the injection; (b) Information will be provided to staff and to Plaintiff's students regarding diabetes, warning signs, and symptoms of low and high blood sugar levels.

33. Superintendent Gunner's purported accommodation conspicuously failed to address Plaintiff's request that verbal confirmation be obtained in the event that she appears to be

asleep in order to determine that she actually is asleep and not merely undergoing an episode of high blood sugar; rather, the response specifically states that "further episodes of disorientation [or] sleepiness...would be treated as grounds for disciplinary action."

34. Further, Perkins failed to disseminate information on Plaintiff's disability to students and staff, instead informing Plaintiff that it was her responsibility to do so if she so chose.

35. After plaintiff made a written request for accommodation, Defendant Dr. James P. Gunner and Defendant Stephen P. Finn exhibited very negative attitudes toward her continuing to teach at the Perkins Local School District.

36. On information and belief Defendant Dr. James P. Gunner and Defendant Stephen P. Finn took action, separate and in concert, and through their agents and subordinate employees, to force the Plaintiff to retire from her position as a teacher because of and based on age, disability and in retaliation for taking protected activity.

37. In January 2009, Plaintiff received notice that she was to be evaluated for the third time in the preceding seven months.

38. On or about March 3, 2009, Plaintiff was notified yet again that she would be evaluated the next week.

39. Upon receiving this notification, Plaintiff contacted her Perkins Educational Association representative, John Gerber, and requested that he file a grievance on her behalf with respect to the excessive number of evaluations to which she was being subjected.

40. Immediately after expressing her intent to pursue a grievance, Plaintiff received a letter from Finn demanding that she account for her whereabouts during two (2) class periods on February 25, 2009; Plaintiff was contemporaneously verbally informed that unnamed witnesses

claimed to have seen her at a local fast food restaurant during the time in questions.

41. On March 8, 2009, Plaintiff provided the requested account in writing, denying that she had been at the restaurant and explaining that she had been testing her sugar level via glucometer and injecting herself with insulin in her car in the school parking lot.

42. Plaintiff's prompt response was entirely ignored, with Finn sending her another letter on March 15, 2009, indicating that "Since I have not received the written response from you...I have no choice but to notify Superintendent, Mr. Jim Gunner, Perkins Local Schools of this situation."

43. Based upon this allegation and explicitly without consideration of Plaintiff's explanation, Superintendent Gunner imposed a three-day unpaid suspension on April 2, 2009, bypassing the suspension with pay step required by the progressive discipline policy as set forth in the Collective Bargaining Agreement between the Perkins Educational Association and the Perkins Board of Education.

44. On April 7, 2009, Plaintiff requested from Perkins Local Schools a copy of her personal file; upon reviewing the file, she discovered that a number of documents had been placed therein without notice and an opportunity to respond as required by the Collective Bargaining Agreement between the Perkins Educational Association and the Perkins Board of Education.

45. Plaintiff was suspended without pay from August 25, 2009 to September 11, 2009 based on "an ongoing problem" consisting of "the unprofessional conduct of falling asleep," again without any witnesses thereto having bothered to obtain contemporaneous verbal confirmation that she was actually asleep, rather than simply appearing to be so. Further, Perkins ordered Plaintiff to undergo a psychological examination.

46. On or about March 19, 2010, Plaintiff was engaged in a discussion with her class

regarding sensationalistic yellow journalism when a student in the class referred to "porno" as an example of same. Based on the student's comment, plaintiff referred to Playgirl Magazine as an example of sensationalistic journalism.

47. On March 29, 2010, upon arriving for her teaching duties, Plaintiff was presented with a letter characterizing the above as "inappropriate discussions with your high school studies class regarding pornography" and suspending her without pay, effective immediately.

48. On April 1, 2010, Plaintiff met with her Perkins Educational Association representative and Superintendent Gunner, who informed her of his intention to recommend to the Perkins Board of Education at its next meeting on April 14, 2010 that Plaintiff's teaching contract be terminated based on the classroom discussion in which she had mentioned Playgirl Magazine and the purported incidents of Plaintiff falling asleep during school hours.

49. On April 4, 2010, Plaintiff spoke with Lisa Crescimano, Treasurer of the Perkins Board of Education, who informed her that the Board intended to terminate her teaching contract, despite the fact that the matter had not yet been presented to the Board for consideration or action.

50. The Board subsequently adopted a resolution terminating Plaintiff's teaching contract at its April 14, 2010 meeting.

51. Plaintiff was informed of the Board's decision via a letter from the Board, signed by Crescimano, the next day, April 15, 2010.

52. Upon receiving notice of the Board's intent to terminate her employment, Plaintiff requested a hearing under Sections 3319.16 and 3319.161 of the Ohio Revised Code, which hearing was held on July 21-22 and August 11-12 of 2010 before referee Harry Taitch.

53. After the conclusion of the hearing, on October 9, 2010, the Report and Recommendation of the Referee was issued, concluding that Plaintiff's termination for cause was

appropriate under the circumstances. However, this forum was not appropriate to raise the civil rights claims in this Complaint so not all the evidence was presented.

54      Subsequently, during a board meeting held on November 10, 2010, the Board of Education terminated Plaintiff's employment.

## COUNT ONE: AGE DISCRIMINATION IN VIOLATION OF OHIO REVISED CODE §§ 4112.14 AND 4112.99

55.     Plaintiff hereby incorporates by reference each and every preceding allegation as if fully set forth herein.

56.     Plaintiff was within the protected age category, being over forty years of age, when the relevant conduct complained of occurred.

57.     Plaintiff was replaced and denied job opportunities by a substantially younger individual.

58.     Age was a substantial or motivating factor in the decision to terminate Plaintiff's employment.

59.     Defendants' actions and omissions violated Plaintiff's rights under Ohio Revised Code §§ 4112.14 and 4112.99, which prohibit discrimination in employment in Ohio due to age which as a direct and proximate result of Defendants unlawful conduct, as more fully described above, Plaintiff suffered emotional pain and suffering, humiliation, mental anguish, harm to her emotional well being, and a loss of life's pleasures, and claim is made therefor.

60.     Since the defendants have discriminated on the basis of age against the Plaintiff, the court has authority to order an appropriate remedy which shall by statutory mandate include reimbursement to the employee for the costs, including reasonable attorney's fees, of the action, reinstate the Plaintiff to her former position with compensation for lost wages and any lost fringe

benefits from the date of the illegal discharge to reimburse the employee for the costs, including reasonable attorney's fees.

### COUNT TWO: DISCRIMINATION ON THE BASIS OF DISABILITY; FAILURE TO PROVIDE REASONABLE ACCOMMODATIONS; AND FAILURE TO ENGAGE IN AN INTERACTIVE PROCESS IN VIOLATION OF OHIO REVISED CODE CHAPTER 4112 AND THE AMERICANS WITH DISABILITIES ACT, AS AMENDED

61. Plaintiff hereby incorporates by reference each and every preceding allegation as if fully set forth herein.

62. At all times relevant hereto, plaintiff's disabilities were known to the defendants. Further, Plaintiff alerted Defendants to her disabilities and requested reasonable accommodations.

63. Defendants failed to provide reasonable accommodations as requested; failed to provide accommodations to which they had agreed; and failed to engage in an interactive process with regard to Plaintiff's need for reasonable accommodations. Instead, Defendants terminated the Plaintiff's employment on the basis of her disabilities, without regard to her need for accommodations, and without engaging in an interactive process.

64. Plaintiff's disability was a substantial and/or motivating factor in the termination of her employment. Further, the grounds asserted by defendants for plaintiff's termination were a pretext for discrimination.

65. Defendants' actions were illegal and constitute, without limitation, discrimination against Plaintiff in relation to the terms, conditions, and privileges of employment and violate, inter alia, the provision of 42 U.S.C. § 12112(a), 42 U.S.C. §12112(b)(5)(A) and Ohio Revised Code §4112.02 (A), for which Defendants are liable to Plaintiff for damages made necessary by such unlawful conduct.

11

## COUNT THREE: RETALIATION FOR ENGAGING IN PROTECTED ACTIVITIES IN VIOLATION OF ADA AND THE OHIO REVISED CODE CHAPTER 4112

66. Plaintiff hereby incorporates by reference each and every preceding allegation as if fully set forth herein.

67. At all times relevant hereto, plaintiff engaged in protected activity by requesting a reasonable accommodation and filing a charge of discrimination under Ohio Revised Code § 4112.02 (I) and the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 1203(a).

68. The termination of plaintiff's employment was retaliatory. Further, plaintiff's request for a reasonable accommodation and filing a charge of discrimination was a substantial and/or motivating factor in her being terminated by the Defendants. Further, the grounds asserted by defendants for plaintiff's termination were pretextual.

69. These actions violated Ohio Revised Code §§ 4112.02 and 4112.99 and the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 1203(a) making Defendants liable therefor.

## COUNT FOUR: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AND CIVIL CONSPIRACY

70. Plaintiff hereby incorporates by reference each and every preceding allegation as if fully set forth herein.

71. Defendant Dr. James P. Gunner and Defendant Stephen P. Finn, as employees of Defendant Perkins Board of Education, acted willfully and maliciously, with spite and ill will, and/or with reckless disregard for Mrs. Smith's legal rights, and with knowledge that such acts and omissions had a great probability of causing, and did cause, substantial harm.

12

72. Defendants, acting individually and with others, conspired for the purposes of effecting the termination of plaintiff's employment and depriving her of statutorily created employment rights.

73. Defendants owed Mrs. Smith a duty to refrain from intentionally injuring her even though she continued to refuse to retire as a teacher.

74. Defendants, James P. Gunner and Defendant Stephen P. Finn through their conduct and with other individuals acting as their agents and co-conspirators, beginning after November of 2008 and until April 2010, conducted a campaign to harass Mrs. Smith that was extreme, outrageous and intentionally invasive of her mental and emotional tranquility, breaching their duty to Mrs. Smith. The conduct of the defendants was outside the bounds accepted in a civilized society and caused severe emotional distress.

75. Defendant's actions, as set forth above and in Counts One through Four, proximately caused damages to the plaintiff, including but not limited to serious emotional distress in the form of emotional trauma, anxiety, nervousness, embarrassment, mental anguish, loss of self-esteem, loss of self control and awareness, harm to her reputation, loss of income and employment benefits, including loss of retirement benefits, medical expenses, and all other damages referred to herein.

76. As a result of Defendant's wrongful conduct, Mrs. Smith has suffered and will continue to suffer damages. Further, Defendant's conduct evidences a conscious disregard for the rights and/or safety of Mrs. Smith that had a great probability of causing substantial harm, thereby rendering Defendants liable for punitive damages.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Honorable Court grant the following relief:

a) Reinstatement with all accrued benefits and back pay as if Plaintiff had never been discharged, or in the alternative, an award of front pay;

b) Compensatory damages to compensate Plaintiff in an amount exceeding $25,000 as may be awarded at trial;

c) Punitive damages against joint and severally against Defendants for their willful, wanton, and egregious conduct, in an amount calculated to deter such future conduct, as may be determined by a jury.

d) An award of costs;

e) An award of attorneys' fees;

f) Pre- and Post - judgment interest on all sums awarded; and

g) Any such other relief as this Court finds equitable and just.

Respectfully submitted,

/s/ Paul T. Belazis

_____
Paul T. Belazis (0030356)

## **JURY DEMAND**

Plaintiff hereby requests a trial by jury of all claims so triable.

/s/ Paul T. Belazis

_____
Paul T. Belazis, Esq.

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing was served on all counsel of record by operation of the Court's electronic filing system this 18th day of November 2013.

/s/ Paul T. Belazis

_____

Paul T. Belazis