EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
DETROIT FIELD OFFICE

PLAINTIFF'S EXHIBIT 2 2-11-2014

| | | |
|---|---|---|
| CAROL SMITH,<br>    Charging Party | ) | |
| | ) | EEOC Charge No. 471-2010-01950 |
| vs. | ) | |
| | ) | **AFFIDAVIT OF JAMES P. GUNNER** |
| PERKINS LOCAL SCHOOLS,<br>    Respondent | ) | |

\* \* \* \* \* \* \*

STATE OF OHIO )
                    ) SS:
COUNTY OF ERIE )

      I, James P. Gunner, being of age and sound mind, do hereby attest, under oath and from personal knowledge, to the following:

      1.    I have been employed by the Perkins Local School District Board of Education ("Board of Education") as Superintendent since May 1, 2008.

      2.    As part of my duties as Superintendent, I am generally responsible for directing and assigning teachers and other employees of the School District, recommending the employment and reemployment of employees to the Board of Education, administering and planning the educational program in the School District, and performing such other duties as the Board of Education determines.

      3.    Shortly after I became Superintendent, I received reports of teacher Carol Smith sleeping when she was supposed to be teaching or otherwise supervising students. I was advised that this had been a problem since at least the 2007-08 school year, and that administrators had verbally warned her for sleeping while responsible for the supervision of students. I further learned that Ms. Smith's refusal to exit the high school during a fire drill during the 2007-08 school year resulted in a citation against the District.

      4.    I learned in September 2008 of four separate incidents during September 2008 of Ms. Smith's sleeping when she was supposed to be supervising middle school students. Mr. Finn issued Ms. Smith a written reprimand for unprofessional conduct for sleeping while responsible for the supervision of students.

      5.    On October 14, 2008, Ms. Smith's representative suggested that Ms. Smith had diabetes which may have contributed to her sleeping or appearing to sleep on the job. My teenage daughter was diagnosed with diabetes when she was three years old, so I am familiar with the condition, the need to carefully monitor blood sugar levels and adjust insulin levels, and the effect of low and high blood sugar levels. My father also had diabetes.

EEOC Charge No. 471-2010-01950
Affidavit of James P. Gunner

6. I received a request from Ms. Smith's attorney, Thomas Zraik, to develop a reasonable accommodation plan to address the effects of Ms. Smith's diabetes while on the job. I met with Ms. Smith and Mr. Zraik on October 23, 2008. I offered to allow Ms. Smith a leave of absence until she could get her blood sugar problems under control, but she said she did not need a leave. We discussed the accommodations suggested by Mr. Zraik and other alternatives.

7. I confirmed in a letter to Ms. Smith on November 18, 2008 the accommodations agreed to during our meeting of October 23, including Ms. Smith's calling the office for classroom coverage when she needed to perform an insulin injection or when she was having a medical reaction to high or low blood sugar; permission to conduct glucose tests as necessary; permission to have snacks in the classroom to assist in adjusting for low blood sugar; and information from the school nurse to students and staff regarding diabetes, insulin control and glucose monitoring. I declined Ms. Smith's suggestion that staff or students rouse her whenever she appeared to be sleeping because it did not seem to me to be appropriate for students to take responsibility for Ms. Smith's diabetes, and because no other staff were typically present in Ms. Smith's classroom during the 2008-09 school year.

8. I am not aware that Ms. Smith ever used the accommodations offered to her. It was my understanding that Ms. Smith was to confer with the school nurse to let the nurse know the extent of information about Ms. Smith's medical condition she was willing to share with students and/or staff, but that Ms. Smith did not do so.

9. In late February 2009, I learned that Ms. Smith did not report to her assigned in-school suspension supervision assignment at the middle school for two class periods one day. After a disciplinary conference, I suspended Ms. Smith for three days because of the seriousness of having students unsupervised and because she had previously been warned about similar unprofessional conduct.

10. At the end of the 2008-09 school year, I received a recommendation from High School Principal Chris Gasteier to suspend Ms. Smith because she had arrived late to, then fallen asleep during a video presentation in, a social studies class she had been assigned to observe. The assignment had been made because Ms. Smith was assigned to teach social studies the following year, which she had not recently taught even though it was within her area of licensure through the Ohio Department of Education.

11. Based on the investigation and information shared at Mr. Gasteier's conference, I suspended Ms. Smith from August 25 through September 2, 2009 (the beginning of the following school year) for her continued unprofessional conduct. I also directed her to undergo a physical and psychological examination at the school district's expense to determine whether she was physically and mentally capable of continuing her teaching duties the following school year, because of the repeated instances of her not attending to her duties and the possibility that her medical condition was affecting her ability to do her job.

EEOC Charge No. 471-2010-01950
Affidavit of James P. Gunner

12. In June 2009, I learned that Ms. Smith had been sleeping during training for certain teachers in the use of new computer technology, for which the teachers were being paid by the school district. Other teachers at the training reported Ms. Smith was sleeping during the training, and the instructor (who was not a school district employee) confirmed those reports. After a disciplinary conference, I issued a directive to dock Ms. Smith's pay for two hours of the training.

13. On July 28, 2009, at the request of Dr. Lawrence Kale's office, I sent him a letter outlining our concerns for Ms. Smith's health. In August 2009, I received the report from Dr. Kale regarding his examination of Ms. Smith. Dr. Kale concluded that Ms. Smith's medical conditions did not preclude her from teaching.

14. On or about March 25, 2010, I received a report that on or about Friday, March 19, 2010, in connection with a class lesson on "yellow journalism," Ms. Smith made comments regarding pornography and such magazines as *Playboy* and *Playgirl* and their centerfolds. Together with High School Principal Gasteier, I investigated the allegations by interviewing students. I relieved Ms. Smith from duties with pay pending the conclusion of that investigation.

15. Following the investigation and a disciplinary conference with Ms. Smith and her union representative, I concluded she had had a classroom discussion that was inappropriate, unprofessional and unrelated to the classroom topic. I further concluded that based upon numerous reports b students, Ms. Smith continued to be observed sleeping in class and had repeatedly been tardy to class, thereby leaving students unsupervised. In light of her earlier disciplines, I recommended to the Board of Education that it terminate Ms. Smith's contract due to her continuing pattern of unprofessional conduct.

16. On April 14, 2010, the Board of Education adopted a resolution to begin contract termination proceedings. Ms. Smith requested a hearing before a referee, and that hearing has been scheduled for four days in July 2010.

17. Although Ms. Smith's attorney and union representative have suggested that her diabetes may have produced conditions that made her appear as if she were sleeping, Ms. Smith has rejected such explanations, adamantly maintaining in disciplinary conferences that she was not sleeping but was merely resting and was fully aware of what was going on around her. Regardless of whether she was actually sleeping or only appearing to sleep, she has not been teaching or supervising students or otherwise attending to duties during the many incidents when this has occurred. On one or more of these occasions, witnesses reported that Ms. Smith was snoring.

18. Neither the disciplinary actions against Ms. Smith nor my recommendation for the termination of her employment contract had anything to do with the fact that Ms. Smith has diabetes or requested accommodation for that condition.

EEOC Charge No. 471-2010-01950
Affidavit of James P. Gunner

19. I am aware of at least two other teachers in the school district who have diabetes. Neither of them has been subjected to disciplinary action of which I am aware, and neither has sought accommodations or experienced any apparent effects on their execution of their assigned duties.

20. I am also aware that a number of students in the school district have diabetes, with various accommodation plans in place, so the district is experienced in accommodating the condition.

21. No other teachers have been suspended in at least the past two years, or been recommended for contract termination, because no other teacher has engaged in a pattern of misconduct similar to Ms. Smith's or in similarly serious misconduct.

_____
James P. Gunner

SWORN TO BEFORE ME and subscribed in my presence this 20th day of May, 2010.

_____
Notary Public    12-28-2011

H:\S-Cfw\10433\Perkins.Smith\10433.342 gunner aff2.doc